**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SHAFIQA BAHRAM** | **CIVIL ACTION** |
| **VERSUS** | **No. 26-1302** |
| **BRIAN ACUNA ET AL.** | **SECTION I** |

## ORDER AND REASONS

Before the Court is a motion[1] for a temporary restraining order ("TRO") and preliminary injunction filed by plaintiff Shafiqa Bahram ("Bahram"). Because the Court concludes that the United States District Court for the Eastern District of Louisiana is an improper venue for some of her claims and an inconvenient venue for her remaining claim, the Court *sua sponte* transfers this case to the United States District Court for the Western District of Louisiana.

### I.    FACTUAL BACKGROUND

Bahram is a citizen of Afghanistan who has been detained by United States Immigration and Customs Enforcement ("ICE") in the South Louisiana ICE Processing Center ("SLIPC") pending asylum proceedings.[2] She brings three claims against defendants Brian Acuna, Director of the New Orleans Field Office of ICE, in his official capacity; Scott Ladwig, Deputy Director of the New Orleans Field Office of ICE, in his official capacity; David J. Venturella, acting Director of ICE, in his official capacity; Markwayne Mullin, Secretary of the United States Department of

---

[1] R. Doc. No. 6.
[2] R. Doc. No. 2 ¶¶ 1–2, 12.

1

Homeland Security, in his official capacity; the United States Department of Homeland Security; and ICE (collectively, "the government").

First, she alleges that her detention in SLIPC violates Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, because it constitutes disability discrimination.[3] Bahram argues that the Rehabilitation Act requires the government to reasonably accommodate her disabilities by placing her on supervised release.[4] Second, she alleges that the conditions of her confinement in SLIPC violate the Due Process Clause of the Fifth Amendment to the United States Constitution because they are unconstitutionally punitive.[5] Third, she alleges that the government's denials of her parole requests violate Section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, because it did not apply the parole criteria to Bahram's individual circumstances and it did not adequately explain its decision.[6]

Bahram asks the Court to declare that the government's refusal to parole her violates the Rehabilitation Act, the Fifth Amendment, and the APA; to issue a preliminary and permanent injunction ordering her release "under appropriate conditions of noncustodial supervision"; or, in the alternative, to issue a temporary injunction ordering her release until the government makes "a new written, individualized, and reasoned parole determination" within seven days.[7]

---

[3] *Id.* ¶¶ 67–72.
[4] Id. ¶¶ 40, 45, 54.
[5] *Id.* ¶¶ 73–77.
[6] *Id.* ¶¶ 78–85.
[7] *Id.* at 37–39.

2

## II.   LEGAL STANDARD

### A.   Petitions for a Writ of Habeas Corpus

"[A] habeas petition 'is the proper vehicle to seek release from custody.'" *Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020) (quoting *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997)). This proposition applies with equal force to immigration detainees. *See Trump v. J. G. G.*, 604 U.S. 670, 671–72 (2025) (per curiam) (holding that "Venezuelan nationals believed to be members of Tren de Aragua" seeking "equitable relief against their removal under the [Alien Enemies Act]" could only do so in a habeas proceeding).

If a "claim[] fall[s] within the 'core' of the writ of habeas corpus," it "must be brought in habeas." *Id.* at 672. A claim is within this "core" if it "seeks 'immediate or speedier release' from prison." *Nance v. Ward*, 597 U.S. 159, 167 (2022) (quoting *Heck v. Humphrey*, 512 U.S. 477, 481 (1994)). "Release from physical confinement in prison constitutes release from custody for habeas purposes, even though the state retains a level of control over the releasee." *Poree v. Collins*, 866 F.3d 235, 244 (5th Cir. 2017) (alterations omitted) (quoting *Coleman v. Dretke*, 409 F.3d 665, 669 (5th Cir. 2005)). This includes, for example, parole and conditional release. *See Cook v. Texas Dep't of Crim. Just. Transitional Plan. Dep't*, 37 F.3d 166, 168 (5th Cir. 1994) (parole); *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973) (conditional release). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672 (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)).

**B.     Venue Transfer**

If a case has been filed in a proper venue, a district court may only transfer it under two conditions. First, the case can only be transferred to a venue in which it "might have been brought." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022) (quoting 28 U.S.C. § 1404(a)). Second, the destination venue must be "clearly more convenient than the venue chosen by the plaintiff." *Id.* at 629 (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc)). This determination "is committed to the district court's discretion." *Id.*

In the Fifth Circuit, courts weigh the factors from *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), to determine if a venue is clearly more convenient. *Planned Parenthood*, 52 F.4th at 630. These consist of four "private interest factors" and four "public interest factors":

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

> The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

*Id.* (alterations omitted) (quoting *Volkswagen*, 545 F.3d at 315). The factors "are not necessarily exhaustive or exclusive" and none "can be said to be of dispositive weight." *Id.* (quoting *Volkswagen*, 545 F.3d at 315). Transfer is only justified if "the marginal

gain in convenience will be significant" and "those marginal gains will actually materialize in the transferee venue." *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024).

## III.  ANALYSIS

### A.  Are Bahram's Claims Within "the Core of Habeas Corpus"?

Bahram argues that her action does not need to be brought as a habeas petition because she challenges the government's "violations of statutory obligations independent of [its] asserted detention authority" and "relief is requested as an equitable remedy."[8] But, while this action does not challenge the reason Bahram was first detained, it does challenge the government's legal authority to continue detaining her. The injunctive remedies she requests are within "the core of habeas corpus" because she "seeks either immediate release from [her] confinement or the shortening of its duration." *Preiser*, 411 U.S. at 489. Therefore, because Bahram is presently detained in Basile, Louisiana,[9] within the territorial jurisdiction of the U.S. District Court for the Western District of Louisiana, this Court cannot order her release. For the same reason, as explained below, the Court cannot entertain her Rehabilitation Act and Fifth Amendment claims.

### 1.  Rehabilitation Act

Bahram's claim pursuant to the Rehabilitation Act is within "the core of habeas corpus" because, if she were to prevail, she would be granted her requested

---

[8] R. Doc. No. 16, at 2.
[9] *Id.* ¶ 1.

accommodation: release on probation.[10] *See Barnes v. Gorman*, 536 U.S. 181, 187 (2002) (interpreting the Rehabilitation Act's implied private right of action to authorize compensatory damages and injunctive relief). Another federal district court, when confronted with a similar claim, has reached the same conclusion. *See Fuentes v. Choate*, No. 24-1377, 2024 WL 2978285, at *12 (D. Colo. June 13, 2024) ("Insofar as she seeks injunctive relief in the form of her immediate release from ICE custody, the Court finds that Petitioner's Rehabilitation Act claim is simply a repackaged habeas request.").

 2.    *Fifth Amendment*

Bahram's Fifth Amendment claim is also within "the core of habeas corpus." Generally, "[w]hen 'a prisoner challenges an unconstitutional condition of confinement . . .,' the proper vehicle is a civil rights action if a determination in the prisoner's favor *will not* automatically result in his accelerated release." *Lineberry v. United States*, 380 F. App'x 452, 453 (5th Cir. 2010) (per curiam) (emphasis added) (alteration added) (quoting *Carson,* 112 F.3d at 820–21). But, for Bahram, a determination in her favor *would* automatically result in her accelerated release, so the proper vehicle for her Fifth Amendment claim is a habeas petition. She in fact contends that the conditions at SLIPC "are not amenable to piecemeal adjustments capable of reasonably accommodating her disability-related needs," and therefore, the unconstitutional conditions of her confinement can only be remedied by her

---

[10] Id. ¶ 72.

release.[11] *Accord Cheek v. Warden of Fed. Med. Ctr.*, 835 F. App'x 737, 739 (5th Cir. 2020) (per curiam) (holding that a conditions-of-confinement claim was cognizable in habeas because it alleged that release was the only remedy that could abate the constitutional violations).

### 3.    Administrative Procedure Act

Unlike her other two claims, Bahram's APA claim is not within the core of habeas corpus because, even if her allegations are correct, she would not be entitled to release. At the end of Bahram's APA claim, she does, however, tack on a request for release, which could by itself arguably support a finding that the Western District of Louisiana is the proper forum for her case.[12]

Alternatively, the bulk of her claim is that the government's review of her parole requests was procedurally deficient.[13] The Supreme Court has held that challenges to parole procedures do not need to be brought in a habeas petition because success "means at most a new parole hearing," not "immediate release from confinement or a shorter stay in prison." *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). On the other hand, "when a prisoner challenges the result of a single defective parole hearing that claim must be pursued by writ of habeas corpus." *Cook*, 37 F.3d at 168.

Despite Bahram's offhand demand for release, her APA claim falls within the first category and does not need to be brought as a habeas petition. She alleges that

---

[11] *Id.* ¶¶ 54, 75–77.
[12] *Id.* ¶ 85.
[13] *Id.* ¶¶ 55–66, 78–84.

7

the government's denials of her parole requests were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "without observance of procedure required by law."[14] 5 U.S.C. § 706(2)(A), (D). And she recognizes that the proper relief is for the Court to "hold unlawful and set aside" the denials.[15] 5 U.S.C. § 706(2). But, even if the Court were to do that, she would not be released. Instead, "the proper course, except in rare circumstances," would be to remand her parole requests to the agency "for additional investigation or explanation." *Calcutt v. FDIC*, 598 U.S. 623, 629 (2023) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). This would be akin to ordering "a new parole hearing," and would not necessarily entail her release because the government may deny her request after reconsideration. *Wilkinson*, 544 U.S. at 82.

**B.     Is the Western District of Louisiana "Clearly More Convenient"?**

This Court cannot order Bahram to be released. It also cannot hear her Rehabilitation Act and Fifth Amendment claims because they must be brought in habeas. However, the Eastern District of Louisiana is one proper venue for her APA claim. *See* 28 U.S.C. § 1391(e)(1)(A). But rather than dismissing or transferring her Rehabilitation Act and Fifth Amendment claims while proceeding with her APA claim, this Court finds that, "in the interests of justice," 28 U.S.C. § 1404(a), this case

---

[14] *Id.* ¶¶ 66, 84.
[15] *Id.* ¶ 84

should be transferred to the Western District of Louisiana because that is a "clearly more convenient forum" for this dispute.[16] *Volkswagen*, 545 F.3d at 315.

In opposing transfer, Bahram emphasizes her own choice in filing her case in this district[17]. This "is clearly a factor to be considered but in and of itself it is neither conclusive nor determinative." *In re Horseshoe Ent.*, 337 F.3d 429, 434 (5th Cir. 2003). It is less weighty under these circumstances, where Bahram did not file in the district in which she is presently detained. *See Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010) ("The plaintiff's choice of forum receives less deference, however, if the plaintiff does not reside in the district."); *Britt v. Jan Tran Inc.*, No. 10-1979, 2011 WL 1117124, at *3 (E.D. La. Mar. 23, 2011) (Lemelle, J.). Because, as the Court explains below, all the *Gilbert* factors are either neutral or favor transfer, Bahram's preference alone is not enough to tip the balance.

### 1.    *Private Interest Factors*

The first private interest factor, "the relative ease of access to sources of proof," cuts in favor of transfer. It "weighs in favor of transfer where the current district lacks any evidence relating to the case. But when 'the vast majority of the evidence is electronic, and therefore equally accessible in either forum,' this factor bears less strongly on the transfer analysis." *In re TikTok, Inc.*, 85 F.4th 352, 358–59 (5th Cir.

---

[16] Bahram does not contest that this case "might have been brought" in the Western District of Louisiana, as required for transfer pursuant to 28 U.S.C. § 1404(a).
[17] R. Doc. No. 10, at 8–9; R. Doc. No. 16, at 3.

2023) (citations and alterations omitted) (quoting *Planned Parenthood*, 52 F.4th at 630).

Bahram argues instead that this factor weighs in favor of this district because her "action principally challenges agency decision-making, and the central documentary evidence . . . is maintained by or accessible through the ICE New Orleans field office."[18] She also insists that "necessary testimony can readily proceed by declaration, deposition, or remote transmission."[19] But this is a mischaracterization of her own complaint. Only her APA claim challenges the government's decision-making procedures.[20] And even this claim revolves around the activity of officers in the Western District who, according to her own exhibits, denied her parole requests.[21] Her Rehabilitation Act and Fifth Amendment claims contest the merits of the government's parole decisions, which depend primarily on her disabilities and the conditions of her confinement.[22] According to the government, documents related to Bahram's medical condition and the conditions at SLIPC are in the Western District.[23] Bahram does not discuss these documents at all in her briefing, mentioning only documents related to her parole requests.[24]

---

[18] R. Doc. No. 10, at 10.
[19] R. Doc. No. 16, at 4.
[20] R. Doc. No. 2 ¶¶ 82–83.
[21] R. Doc. No. 2-3, at 1, 32, R. Doc. No. 2-4, at 1, 48–49; R. Doc. No. 2-8, at 1.
[22] R. Doc. No. 2 ¶¶ 68–71, 74–76.
[23] R. Doc. No. 14, at 8.
[24] R. Doc. No. 10, at 10–11; R. Doc. No. 16, at 3–4.

The second private interest factor, "the availability of compulsory process to secure the attendance of witnesses" is neutral. This factor "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Planned Parenthood*, 52 F.4th at 630–31 (quoting *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d at 488, 499 (6th Cir. 2016)). The government does not identify any potentially unwilling witnesses.[25] Bahram mentions that GEO Group, Inc., the private operator of SLIPC, is a potential nonparty witness.[26] She alleges that its registered Louisiana office is in Mandeville, Louisiana, in the Eastern District.[27] But she does not allege or show that a representative would be unwilling to testify.

The third private interest factor, "the cost of attendance for willing witnesses," is also neutral. The Fifth Circuit "assesses convenience as a function of distance." *Clarke*, 94 F.4th at 514. If the two venues are more than one hundred miles apart, "the factor of inconvenience borne by witnesses positively and linearly scales with the additional distance they must travel." *Id.* According to the government's response, the distance between the two venues is only 130 miles.[28] Additionally, Bahram's claims may require testimony by officers from both districts. Bahram believes that her parole determinations were made by officers in St. Rose, in the Eastern District.[29] The government claims that the determinations were made instead by officers in

---

[25] R. Doc. No. 14, at 9.
[26] R. Doc. No. 10, at 11.
[27] *Id.*
[28] R. Doc. No. 14, at 9.
[29] R. Doc. No. 10, at 5–6.

Oakdale, in the Western District.[30] Therefore, wherever this case is heard, it is likely that some officers will have to travel from one district to the other. Additionally, Bahram herself is detained in the Western District, and while she may prefer her case to be heard here for reasons other than convenience, it is clearly more convenient for her to testify in the Western District. *See Montgomery v. Barr*, 502 F. Supp. 3d 165, 178 (D.D.C. 2020) (quoting *Starnes v. McGuire*, 512 F.2d 918, 931 (D.C. Cir. 1974)) ("The burdens and dangers involved in transporting a prisoner across long distances . . . will normally justify transfer.").

The final private interest factor is a catch-all. It includes "all other practical problems that make trial of a case easy, expeditious and inexpensive." One of these is judicial economy, which favors keeping Bahram's claims together in one case in the Western District, rather than creating parallel litigation in two districts that arise out of a common set of facts. This would "require[] two courts to engage in the work of one, prompting serious concerns about duplication of judicial resources, the consistency of rulings, and litigation costs." *Defense Distributed v. Bruck*, 30 F.4th 414, 429 (5th Cir. 2022). The government also raises another minor consideration in favor of transfer: the familiarity of the Western District with the conditions at SLIPC, due to that district's ability to hear habeas claims from detainees there.[31] *See* 15 *Wright & Miller's Federal Practice and Procedure* § 3854 (4th ed. 2026) ("Several

---

[30] R. Doc. No. 14, at 8–9.
[31] R. Doc. No. 14, at 10.

courts have noted that judicial economy also supports the transfer of cases to a court that has dealt with the same major issues in other cases.").

### 2. *Public Interest Factors*

The first public interest factor, "the administrative difficulties flowing from court congestion," is neutral. "Parties' assertions that their case needs to be decided quickly should not affect the weight of this factor." *In re Chamber of Com. of United States of Am.*, 105 F.4th 297, 310 (5th Cir. 2024). Also, it "normally weighs against transfer when the 'case appears to be timely proceeding to trial before the' transferee district." *TikTok*, 85 F.4th at 363 (quoting *Planned Parenthood*, 52 F.4th at 631).

This case has not yet proceeded beyond the pleading stage. Bahram's motion for a TRO and preliminary injunction remain pending and, if her circumstances do merit immediate release, her motion should be heard by a court with the power to order that relief. *Cf. Chamber of Commerce*, 105 F.4th at 310 ("Venue also requires prompt resolution.").

Bahram also suggests that this factor weighs in her favor because the Western District is more congested than the Eastern District.[32] The Court is not convinced by her reading of the evidence, as "measuring congestion is easier said than done." *Clarke*, 94 F.4th at 515. In any event, "[i]t is well-settled law that § 1404(a) transfer cannot be granted solely because of court congestion." *Clarke*, 94 F.4th at 515. Even if Bahram were to show that the Western District is marginally busier than the

---

[32] R. Doc. No. 10, at 12.

Eastern District, this subfactor is not enough to overcome the weight of the other reasons for transfer.

The second public interest factor, "the local interest in having localized interests decided at home," weighs strongly in favor of transfer. This "is one of the most important factors in venue determinations." *TikTok*, 85 F.4th at 364 (quoting *Defense Distributed*, 30 F.4th at 435). In evaluating this factor, courts "look not to 'the parties' significant connections to each forum . . . but rather the significant connections between a particular venue and the events that gave rise to a suit.'" *Id.* (quoting *Defense Distributed*, 30 F.4th at 435). Bahram argues that this factor does not favor transfer because "the nucleus of the Complaint is the legality of federal administrative decision-making conducted from this district."[33] But this is only true of her APA claim, and even that claim depends on the relationship between decisionmakers in both districts. Her Rehabilitation Act and Fifth Amendment claims are about the merits of this decision-making, which depend on the conditions of her confinement at SLIPC.

The third and fourth public interest factors, "the familiarity of the forum with the law that will govern the case" and "the avoidance of unnecessary problems of conflict of laws or in the application of foreign law" are inapplicable to this case because it only presents questions of federal law. These factors "more commonly appl[y] where the destination venue is in a different State—in which case that State's

---

[33] *Id.* at 13.

familiarity with the applicable law would be especially probative to the transfer analysis." *Planned Parenthood*, 52 F.4th at 632.

### 3.  *Weight of All the Factors*

The Court finds, after weighing all the *Gilbert* factors, that the Western District of Louisiana is "clearly more convenient" than the Eastern District of Louisiana. Therefore, transfer to the Western District is warranted.

## IV.  CONCLUSION

**IT IS ORDERED** that the above-captioned matter is **TRANSFERRED** to the United States District Court for the Western District of Louisiana.

New Orleans, Louisiana, July 21, 2026.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

15